## A02A0446. TROTTER v. THE STATE.
### (568 SE2d 571)

Johnson, Presiding Judge.

A judge, sitting without a jury, found Howard Trotter guilty of driving under the influence of alcohol to the extent that it was less safe to drive, driving without proof of insurance, and driving with a suspended license. Trotter appeals from the convictions and the denial of his motion to suppress evidence. He enumerates as error the trial court's finding that police had probable cause to administer a breath test, and the trial court's admission of the breath test results when the state failed to lay a proper foundation. We affirm his convictions.

Viewed in a light most favorable to the verdict, the evidence shows that the Hapeville Police Department received a call from the Atlanta Police Department regarding a possible hit and run accident in the City of Atlanta. The Atlanta dispatcher reported that the suspect was driving a 1984 Toyota Camry and was being followed to Hapeville by the driver of a wrecker truck. A Hapeville police officer received a description of the vehicle and was told that the wrecker was blocking the suspect's car in a driveway on Old Jonesboro Road. The officer arrived at the address and saw the Toyota blocked in the driveway by the wrecker.

The officer went to the Toyota "to check on [the driver], make sure he was okay." He noticed that the car had suffered extensive damage to the front end, and that it was still smoldering. The officer opened the car door to speak to the driver, Trotter, and noticed that he was incoherent, could not respond, had blood on his mouth, and that a freshly lit cigarette also had blood on it. The officer radioed for medical assistance.

The officer detected an odor of alcohol coming from inside the vehicle. He asked Trotter for his license, proof of insurance, and keys to the car. Trotter handed the officer the keys, one of which was a Toyota key. Trotter produced no license or proof of insurance. The officer asked Trotter to get out of the car. As he got out, Trotter

grabbed the door frame to secure his balance. The officer helped Trotter get out by grabbing his arm and pulling him toward the back of the car. A second officer arrived on the scene and moved Trotter to a nearby area for field sobriety tests.

The first officer interviewed the passenger in the wrecker, who said she witnessed the accident and followed the vehicle involved. The passenger said that Trotter had been driving the vehicle at the time of the accident.

As the second officer administered the field sobriety tests, he noticed a strong odor of alcohol coming from Trotter and saw that Trotter had a lip injury. Trotter's face was flushed, his eyes were watery, bloodshot, and glassy, and his speech was slurred. The officer also noted the damage to the car's front end. The officer administered several sobriety tests, all of which Trotter failed. Both officers watched Trotter in his attempts to perform the tests, and both concluded that Trotter was under the influence of alcohol. At that time, Trotter was placed under arrest and read the implied consent notice. Trotter agreed to have his breath tested.

The officer who performed the two breath tests testified about such matters as his training and certification, the procedure employed, and the machine used, but he could not recall the results of Trotter's tests. One of the arresting officers testified that he observed the tests being conducted and received a printout of the results; according to the officer, the Intoxilyzer 5000 showed Trotter had a blood alcohol content of 0.233 on one test, and 0.240 on the other. He had noted the lower reading on the citation.

At trial, Trotter testified that he was visiting his cousin at the Old Jonesboro Road address, that he had not driven at all that day, and that he was standing near the porch, not sitting in his car, when police arrived. He admitted that he had been drinking that day.

1. Trotter contends that the trial court erred in holding that police had probable cause to administer a breath test when no articulable suspicion of criminal conduct existed. His argument is twofold: (a) officers were not authorized to administer a breath test since they lacked probable cause to believe that he was driving the car; and (b) officers lacked articulable suspicion to approach and detain him based only upon a witness' report that he had been driving.

The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility.[1] Sufficient probable cause to conduct a DUI arrest only requires that an officer have knowledge or reasonably trustworthy information that a

---

[1] See *Fairbanks v. State*, 244 Ga. App. 123, 124-125 (1) (534 SE2d 529) (2000).

suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely.[2] It is not necessary for the officer to actually see the suspect driving for there to be probable cause to make a DUI arrest.[3] Here, the officer saw Trotter sitting behind the wheel of the car, after being told by the dispatcher that the car in which Trotter was sitting had just been involved in a hit and run accident. The officer saw blood on Trotter's mouth and on a freshly lit cigarette. As advised by the dispatcher, the vehicle was being blocked in the driveway by the wrecker that had followed the car from the scene of the hit and run accident, and the vehicle matched the description given by the dispatcher. The car had extensive front-end damage, and its engine was still smoldering. Trotter smelled of alcohol, was incoherent, had the keys to the car, and was unable to pass sobriety tests. Clearly, at the time Trotter took the breath test, police had probable cause to believe he had been driving a vehicle while under the influence of alcohol.[4]

Furthermore, contrary to Trotter's claim, the officer's initial approach and detention of Trotter as he sat in his cousin's driveway were supported by reasonable suspicion. An officer may conduct a limited investigative inquiry of an automobile and its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.[5] And, although an officer may know nothing about the reliability of the person who reported the offense, her reliability may be established if the details are corroborated by the observations of the police.[6]

In this case, the information provided by the dispatcher, combined with the officer's own observations of the vehicle, provided a basis for the officer to make a limited inquiry of Trotter as he sat in the driveway.[7] This enumeration, therefore, has no merit.

2. Trotter argues that the trial court erred in allowing the admission of the breath test results when the state failed to lay a proper foundation. He points out that the state failed to introduce a printout from the breath testing machine showing the results and urges that the arresting officer's testimony as to what the results showed at the time of the test is insufficient. We need not reach the merits of this

---

[2] *Waggoner v. State*, 228 Ga. App. 148, 150 (2) (491 SE2d 88) (1997).

[3] See *Lufburrow v. State*, 206 Ga. App. 250-251 (2) (425 SE2d 368) (1992) (physical precedent only); *Napier v. State*, 184 Ga. App. 770, 771-772 (1) (362 SE2d 501) (1987).

[4] See *Napier*, supra.

[5] See *Jenkins v. State*, 201 Ga. App. 654, 656 (2) (413 SE2d 460) (1991).

[6] *Easterlin v. State*, 216 Ga. App. 112, 113 (452 SE2d 801) (1995).

[7] See id. at 114.

argument because, even if we assume that the trial court erred in admitting the testimony regarding the test results, reversal would not be warranted.

The accusation charged Trotter with driving a vehicle while under the influence of alcohol to the extent that it was less safe for him to drive; it did not charge Trotter with having a blood alcohol concentration of 0.08 grams or more.[8] As the trial court announced in rendering its decision, Trotter was found guilty of the "less safe" charge. The breath test results which Trotter challenges were merely cumulative of other evidence of his less safe state, including his appearance, odor of alcohol, incoherence, inability to exit the car unassisted, and failure to pass field sobriety tests. As such, the admission of the breath test results was harmless.[9]

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED JULY 3, 2002.

*Robert Kenner, Jr.*, for appellant.
*Carmen D. Smith, Solicitor-General, Milton C. Barwick, Jody L. Peskin, Assistant Solicitors-General*, for appellee.

